Sophia P. Granade filed suit against Muhammed A. Jawad, M.D., alleging professional negligence in connection with Dr. Jawad's reduction and treatment of a Colles's fracture in Mrs. Granade's left wrist. After a two-day trial the case was submitted to the jury, which returned a verdict for Dr. Jawad. Mrs. Granade filed a motion for a new trial, stating as her only ground: "[T]he verdict is against the great weight and preponderance of the evidence." The trial court granted Mrs. Granade's motion for new trial, and Dr. Jawad appealed.
The only legal issue presented at trial that bears upon this appeal is whether Dr. Jawad's failure to X-ray Mrs. Granade's wrist, after the fracture was reduced, but before the cast was removed, constituted a deviation from the medically accepted practice and procedure for the treatment of a Colles's fracture. The evidence is undisputed that Dr. Jawad did X-ray Mrs. Granade's wrist immediately after the cast was placed on her wrist and that the X-ray showed that the bone was properly aligned. Dr. Jawad did not thereafter X-ray Mrs. Granade's wrist until the cast was removed 31 days later. At this time Dr. Jawad found that the fracture had displaced backward. Thereafter, Mrs. Granade was treated by orthopedic surgeons. At the time of his treatment of Mrs. Granade, Dr. Jawad was a licensed and board certified general surgeon with a subspecialty in vascular surgery.
Mrs. Granade proffered two medical experts at trial to establish the proper medical procedure for the treatment of a Colles's fracture following reduction and casting. The following is the pertinent testimony of one of Mrs. Granade's medical experts:
 "Q Doctor, in your expert opinion, does not having X-rayed Ms. Granade's wrist from December 1, 1979, until January the 11th, 1980, comply with the accepted standards for the treatment of a Colles' fracture by physicians in the same general neighborhood as Jackson, Alabama and the state of Alabama and for a doctor in the same general line of practice?
"A For an orthopaedic surgeon, I would say no.
". . . .
 "Q Well, Doctor, in your expert opinion, would not having X-rayed a wrist such as Ms. Granade's for a period from December the 1st, 1979, until January the 11th, 1980, a period of some over five weeks, would that type procedure not comply with the accepted standards for treatment of a Colles' fracture?
 "A In my opinion, that's inadequate care of a Colles' fracture, yes."
The following is the pertinent medical testimony of Mrs. Granade's other medical expert: *Page 473 
 "Q Now, Doctor . . ., in your opinion, after Doctor Jawad saw Mrs. Granade on December 1st, 1979, and X-rayed her and reduced the fracture and put a cast on her; failed to X-ray her again on the 6th [of December], failed to X-ray her again on the 21st [of December], and finally X-rayed her again some six weeks after the closed reduction; in your opinion is that departure from acceptable medical practice?
"A. Yes, sir."
Dr. Jawad, after being duly qualified as a medical expert, testified in his own defense as such an expert. His testimony regarding the standard of care was as follows:
 "Q Doctor, from your practice in Clarke County [Alabama], in Ocala, Florida, [and in] Illinois, do you have an opinion whether or not you deviated from the standard of care for this type injury — do you have an opinion?
"A Yes.
". . . .
 "Q What is your opinion whether or not you deviated from the standard of care?
"A I didn't deviate from the standard of care.
 "Q You are familiar with the standard of care in Chicago, Clarke County and Florida . . . been familiar with it since 1979?
"A Right.
". . . .
 "Q Doctor, what you did is what you have known other doctors to do in the same area that you practiced since 1979 here in this state, isn't it?
"A Right."
There was credible testimony that Dr. Jawad did not deviate from the standard of care used by physicians in Clarke County, Alabama, where the treatment was given. Where the plaintiff, who would have the burden of proof, is himself or herself a medical expert qualified to evaluate the physician's conduct, we have held that the plaintiff's testimony is sufficient to meet the plaintiff's burden of proffering expert medical testimony as to what is or is not the proper practice, treatment, or procedure. Holt v. Godsil, 447 So.2d 191 (Ala. 1984); Lamont v. Brookwood Health Services, Inc.,446 So.2d 1018 (Ala. 1983). Likewise, the jury could rely on the testimony of the defendant physician, who was duly qualified as a medical expert, that he used proper practice, treatment, or procedure in treating the plaintiff. The mere fact that this was the only expert medical testimony offered by Dr. Jawad as to the standard of medical care does not convince this Court that the jury's verdict was so against the great weight and preponderance of the evidence as to be clearly wrong.
Even given the testimony of Mrs. Granade's well qualified medical experts, we conclude that the great weight of the evidence does not plainly and palpably show that the trial court was in error in granting the new trial; and, using parallelism, we cannot hold that the overwhelming weight of evidence supports the jury's verdict.
Though the standard, heretofore applicable, for reviewing a trial court's order granting a new trial on the ground that the jury's verdict is against the great weight and preponderance of the evidence, has been frequently criticized, and was for a time rejected by the former Court of Appeals, this Court apparently has followed it faithfully.
That standard heretofore applied in this state has been that the trial court's decision granting a new trial on the ground that the jury's verdict is against the great weight and preponderance of the evidence will not be disturbed unless the evidence plainly and palpably supports the verdict. Groom v.Reynolds, 396 So.2d 690 (Ala. 1981); Hubbard Bros. Const. Co.v. C.F. Halstead Contractor, Inc., 294 Ala. 688, 321 So.2d 169
(1975); Cobb v. Malone, 92 Ala. 630, 9 So. 738 (1891).
The rule which we have heretofore adhered to was originally enunciated in Cobb v. Malone, a case which specifically concerned review of the trial court's order *Page 474 
overruling a motion for new trial. That rule, dictum though it was, appeared as follows:
 "[T]he decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust. And decisions granting new trials will not be reversed, unless the evidence plainly and palpably supports the verdict. . . ." (Emphasis added.)
Id., 92 Ala. at 635, 9 So. at 740. Hereinafter this last sentence shall be referred to as the "Cobb standard."[1]
The Cobb dictum regarding the standard of review for the granting of motions for new trial by trial courts on the ground that the verdict was against the great weight or preponderance of the evidence was first applied as a rule in Merrill v.Brantley Co., 133 Ala. 537, 539, 31 So. 847 (1902). Eleven years later, in Anderson v. Southern Railway Co., 184 Ala. 468,469, 63 So. 473 (1913), this Court reasoned that the Cobb
standard was necessary because "the trial judge had the opportunity of seeing the witnesses and hearing the evidence — [an opportunity] of which we are deprived," and so could exercise better judgment than an appellate court in determining whether to grant a new trial. In the case of Hatfield v. Riley,199 Ala. 388, 74 So. 380 (1917), the Cobb standard of review was tested against a 1915 legislative enactment that no presumption in favor of the correctness of a judgment granting or refusing a new trial should be indulged by the appellate courts. In Hatfield, this Court held that the Cobb presumption in favor of the trial court's ruling was not changed by the legislative enactment. This Court in Cook v. Sheffield Co.,206 Ala. 625, 91 So. 473 (1921), made it clear that there was no distinction, in this Court's standard of review, between orders granting, and those denying, new trials on the ground that the verdict was against the great weight or preponderance of the evidence. This holding was reaffirmed in Ex parte Landers,214 Ala. 20, 106 So. 225 (1925), and later in Lindsay ProductsCorp. v. Alabama Securities Corp., 247 Ala. 662, 25 So.2d 852
(1946).
This Court reinforced the Cobb standard in King v. Scott,217 Ala. 511, 116 So. 681 (1928), by holding that when an order granting a new trial on the ground that the verdict was against the great weight of the evidence is appealed, the record must be construed against the appellant.
The Court reaffirmed the Cobb standard in Reed v. Thompson,225 Ala. 381, 143 So. 559 (1932). Five years later, in W.M.Templeton Son v. David, 233 Ala. 616, 173 So. 231 (1937), Justice Bouldin, writing for one division of this Court, attacked the Cobb line of cases. He wrote:
 "It may be strongly argued that logically the same presumption should not be indulged on appeal in favor of the action of the trial court overturning a verdict of a jury on issues of fact, as in cases where the verdict is sustained.
 "The trial court should indulge all reasonable presumptions in favor of the verdict of the jury, and unless on full consideration he is convinced by the great weight of the evidence that the verdict is wrong, it should not be disturbed.
 "The jury is the law constituted tribunal for the trial of controverted issues of fact. It is not the province of the trial judge to assume the functions of the jury, and set aside its verdict merely because he thinks the verdict should have been different.
 "So, when reviewing a ruling granting a motion for new trial, it seems logical that the appellate court should have in mind the presumption due the verdict of *Page 475 
the jury, as well as the opposing views of the trial court. And if, on careful consideration, the appellate court finds the evidence supporting the verdict quite as strong as that supporting the views of the trial judge, the verdict should be reinstated. But the rule in Cobb v. Malone . . . construing our statute touching such appeals has so long prevailed, and the statute been several times readopted with such construction, that any change should come by legislation, if at all. It does not appear that great abuses have prevailed under such rule. What is written in criticism of the rule, as now established expresses the personal views of the writer only."
233 Ala. at 617-18, 173 So. at 232.
The Alabama Court of Appeals adopted the reasoning of Justice Bouldin in attacking the Cobb rule; and it abandoned any presumption in favor of a trial court's order granting a new trial in McEntyre v. First National Bank of Headland,27 Ala. App. 311, 171 So. 913 (1937). In that case, the Court of Appeals reasoned as follows:
 "As was said in the case of Cobb v. Malone and Collins, 92 Ala. 630-633, 9 So. 738, 739: `The power to set aside verdicts has been generally regarded in this country as inherent in courts organized upon the principles of common law, though in some states it is regulated by statute, enumerating the grounds upon which a motion for a new trial may be made. The power is essential to prevent irreparable injustice in cases where a verdict wholly wrong is the result of inadvertence, forgetfulness, or intentional or capricious disregard of the testimony, or of bias or prejudice, on the part of juries, which sometimes occur. But, in exercising the power, the court should be careful not to infringe the right of trial by jury, and should bear in mind that it is their exclusive province to determine the credibility of witnesses, to weigh the testimony, and find the facts. Being selected for their impartiality and qualifications to judge facts, and unanimity of opinion and conclusion being required, their verdicts are presumed to be correct. It has been said that no ground of new trial is more carefully scrutinized or more rigidly limited than that the verdict is against the evidence. Hil. New Trials, 339.' The above is as clear a statement of the law relative to the instant case as can be found in the books, and it is observed by all of the writers on this subject that the power of the court to set aside verdicts of juries should be exercised only when it affirmatively appears that the substantial ends of justice require the examination of the facts by another jury."
27 Ala. App. at 313, 171 So. at 914-15.
In Castleberry v. Morgan, 28 Ala. App. 70, 178 So. 823 (1938), the Court of Appeals stated its reasoning for not following theCobb standard:
 "To allow the judgment, setting aside the verdict of the jury, to stand would be to place in the hands of one man the power to set aside the calm and deliberate conclusion of twelve men, equally honest, equally unprejudiced, and upon whom, by the law, is fixed the duty of ascertaining this very question. We cannot subscribe to such a doctrine."
28 Ala. App. at 72, 178 So. at 825.
In 1946, in Lindsay Products Corp v. Alabama SecuritiesCorp., supra, this Court reaffirmed the Cobb standard, by — strangely enough — citing W.M. Templeton Son (the same case relied on by the Alabama Court of Appeals in 1937 for not following the Cobb standard) for the rule that the same presumption must be indulged in favor of granting the motion that would have been indulged had the motion been overruled, while ignoring Justice Bouldin's attack upon that rule. In essence, since Justice Bouldin had failed to overrule the Cobb
standard, deferring to the legislative prerogative, the Court seized the opportunity in Lindsay Products to incorporate theW.M. Templeton ruling into the very line of cases that Justice Bouldin had attacked in W.M. Templeton. Lindsay Products was later reaffirmed in Morgan Co. v. Hart, 260 Ala. 418, *Page 476 71 So.2d 278 (1954). W.M. Templeton was cited again as support for theCobb standard in City of Tuscaloosa v. Townsend, 274 Ala. 268,147 So.2d 824 (1962). The Cobb standard was again, without question, the law.
In Adams v. Lanier, 283 Ala. 321, 216 So.2d 713, (1968), this Court overruled the McEntyre, supra, and Castleberry, supra, decisions of the Court of Appeals, further strengthening theCobb standard as precedent.
The Cobb standard of review came under attack again two years later in Grubbs v. Long-Lewis Hardware Co., 285 Ala. 697,235 So.2d 836 (1970). In that case, the appellant contended that our law was inconsistent, in that we allowed an issue to go to a jury if there was a scintilla of evidence to support it, but would nevertheless presume a trial judge's ruling to be correct if the trial judge granted a new trial on the grounds that the verdict was against the preponderance of the evidence. In its holding, the Court declined to overrule 80 years of Cobb
precedent or the scintilla rule, but in doing so it failed to set forth the analysis by which it resolved the apparent conflict between the two doctrines.
Two years after that, in Merchants Bank v. Cotton, 289 Ala. 606, 269 So.2d 875 (1972), this Court, in reviewing the denial of a new trial, in its dicta utilized the following Cobb
language:
 "Jury verdicts are presumed to be correct and no ground for granting a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence. . . ."
287 Ala. at 609, 269 So.2d at 878.
That case was a preview of things to come.
In Johnson v. Hodge, 291 Ala. 142, 279 So.2d 123 (1973), theCobb standard was reaffirmed by this Court. But in 1975 theCobb standard was attacked head-on in the important case ofHubbard v. Bros. Const. Co., supra.
In Hubbard Bros., the Court again reaffirmed the Cobb
standard, but Justice Jones, together with Chief Justice Heflin and Justice Faulkner, filed a notable dissent. In that dissent, Justice Jones stated that the judiciary, in the rightful exercise of its prerogative as to the scope of review, should aim for the constitutionally mandated goal of preserving the right of trial by jury. In so doing, he argued, the Court must abandon the Cobb standard in some new trial situations. Justice Jones contended that the root of the problem lay in the phrase "plainly and palpably" found in the Cobb standard. He asserted, "[T]hese words have been perverted into a quantitative test for the weighing of evidence." 294 Ala. at 695, 321 So.2d at 175. Accordingly, Justice Jones offered this alternative standard of review: "An order granting a motion for a new trial will be reversed for abuse of discretion where on review it is easily perceivable to the mind from the record that the jury verdict is supported by the evidence." Id. The crux of his argument is that the constitutional right of trial by jury is overborne by a standard which renders futile all efforts to review an order granting a new trial where there is any evidence to support a verdict contrary to that rendered by the jury.
Justice Jones's dissent to the contrary, the Cobb standard continued to be the applicable rule of law in these situations. In Robertson Banking Co. v. Ebersole, 331 So.2d 278 (Ala. 1976), this Court upheld the granting of a new trial although it found that there was "abundant evidence to support the jury verdict." 331 So.2d at 279. And in Clark v. Chitwood,339 So.2d 1017 (Ala. 1976), this Court reaffirmed Hubbard Bros. (Justice Jones, while disagreeing with the Cobb standard again, concurred in the face of precedent).
Although the Cobb standard has long been the law, it is far from clear whether that standard is consistent with either the scintilla rule or the constitutional right to trial by jury. While there may or may not be good reasons for judicially restructuring the scintilla rule, there can never be good reasons for attempting to judicially abolish, *Page 477 
curtail, or diminish the constitutional right to trial by jury.
This rule has received the strictest scrutiny and withstood repeated attacks; but the time has come, and we now abolish theCobb standard for appellate review of orders granting new trials on the sole ground that the verdict is against the great weight and preponderance of the evidence, and we overrule that line of cases following the Cobb standard. We hereby adopt the standard proposed by Justice Jones in his dissent in HubbardBros. supra: an order granting a motion for new trial on the sole ground that the verdict is against the great weight or preponderance of the evidence will be reversed for abuse of discretion where on review it is easily perceivable from the record that the jury verdict is supported by the evidence.
By adopting this rule, we do not mean to preempt the trial court's right to grant a new trial when the verdict is against the great weight and preponderance of the evidence. We are merely changing our standard of review when the trial court does so. It would help this Court if a trial court would specify its reason for granting a new trial in those cases in which the trial court believes that justice demands that a new trial be granted on the weight and preponderance ground.
In the case at issue, for the reasons set out at the beginning of this opinion, it is easily perceivable from the record that the jury verdict is supported by the evidence. We reverse and remand for a reinstatement of the jury verdict.
The dictum in Cobb v. Malone setting the standard of review, and the following cases following that Cobb standard, are hereby overruled: Groom v. Reynolds, supra; Hubbard Bros.Const. Co. v. C.F. Halstead Contractor, Inc., supra; Merrill v.Brantley Co., supra; Anderson v. Southern Railway Co., supra;Hatfield v. Riley, supra; Cook v. Sheffield Co., supra; Exparte Landers, supra; Lindsay Products Corp. v. AlabamaSecurities Corp., supra; King v. Scott, supra; Reed v.Thompson, supra; W.M. Templeton Son v. David, supra; City ofTuscaloosa v. Townsend, supra; Adams v. Lanier, supra; Grubbsv. Long-Lewis Hardware Co., supra; Merchants Bank v. Cotton,supra; Johnson v. Hodge, supra; Robertson Banking Co. v.Ebersole, supra; Clark v. Chitwood, supra.
REVERSED AND REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
[1] What we here refer to as the "Cobb standard" or "rule" was not the holding in Cobb v. Malone; the actual holding in Cobbv. Malone would be more in line with the result of this opinion than would be the rule that Cobb has been quoted as supporting.