This is an appeal from a judgment entered on a jury verdict in favor of the defendant in a veterinary malpractice case in which the plaintiff alleged that the defendant caused the death of his horse. We affirm.
On April 9, 1981, Marvin Turner summoned Barbara J. Benhart, D.V.M., to his farm to examine his horse, Satur-D-Knight. Dr. Benhart found the horse to be lathered in sweat and with his hind legs buckling under him and trying to go down. To keep the horse from going down, Mr. Turner would pull it forward with a halter. Dr. Benhart was unable to examine the horse because it kept trying to lie down and would not be still. Dr. Benhart gave the horse a tranquilizer and a muscle relaxer, but it remained agitated. Finally, an hour later, Dr. Benhart was able to check the horse's temperature, which was 104 degrees. The normal temperature for a horse is approximately 99 degrees.
Mr. Turner told Dr. Benhart that there was a mare that was "in season" in an adjacent pasture, and that the horse had been running up and down alongside the fence, and throwing himself against the fence trying to get to this mare. Based on this information, Dr. Benhart suspected that the horse was overexerted. She checked the horse's loin muscles and found that they were elevated, hot, hard, and painful when touched. The combination of the stilted gait, the elevated temperature, the horse being lathered in sweat, and the horse's anxious look led Dr. Benhart to the conclusion that the horse was suffering from azoturia.
Dr. Benhart's attempt to administer electrolytes and calcium solution intravenously was foiled because the horse kept slinging the needle out. Finally the horse went to the ground, but when approached it would *Page 718 
get up and become agitated and uncontrollable. Dr. Benhart administered a second dose of tranquilizer and pain reliever. While Mr. Turner was holding the horse on the ground, Dr. Benhart attempted to pour a water and bicarbonate of soda solution into the horse's mouth. Dr. Benhart confirmed that the horse was swallowing some of the solution, by placing her hand on the horse's throat and feeling as he swallowed. While Dr. Benhart was administering the bicarbonate of soda solution, the horse died.
The sole issue presented for review is whether the trial court erred in denying the plaintiff's motion for new trial based on the ground that the verdict was against the great weight and preponderance of the evidence. There is a strong presumption that jury verdicts are correct, Ashbee v. Brock,510 So.2d 214 (Ala. 1987); Jawad v. Granade, 497 So.2d 471
(Ala. 1986), and that presumption is strengthened by the trial court's denial of a motion for new trial. Ashbee, supra; Howardv. Crowder, 496 So.2d 31 (Ala. 1986).
The plaintiff insists that, because his numerous witnesses testified to facts contrary to those presented by Dr. Benhart, the jury's verdict is against the great weight of the evidence. The jury is free to assess the credibility of a witness in assigning a weight to his testimony. At trial, Mr. Turner testified that the mare was "in false season." However, at his deposition he testified that the horse was trying to get to the mare because she was "in season." This point was significant in determining the cause and degree of the horse's agitation.
One of the plaintiff's expert witnesses, Larry Britt, D.V.M, performed an autopsy on the horse the day after it died. Dr. Britt found no fluid or froth in the lungs of the horse, and concluded that the horse did not drown. Dr. Britt determined that the cause of death was a laryngospasm. At trial, Dr. Britt admitted that the only thing found in the horse's trachea or larynx was some foam; thus, there was no solid obstruction of the horse's airway. Dr. Britt further admitted that a laryngospasm probably would not cause the death of a horse; instead, he said, a horse usually would pass out from lack of oxygen and begin breathing again.
Dr. Britt testified that the most preferred method of administering a bicarbonate of soda solution is through an intravenous solution and that the next most preferred method would be nasogastric, or by a tube to the stomach. Dr. Britt testified that he did not believe that he would use the method utilized by Dr. Benhart, because the horse had received sedatives and was lying down. This testimony does not state that the actions taken by Dr. Benhart were not recognized and accepted practices in the veterinary profession, or that the actions fell below the appropriate standard of care. Dr. Britt merely testified that he did not believe that he would have taken such action.
The plaintiff also presented the expert testimony of Dale J. Lowery, D.V.M., who testified that he would not have taken the same action as Dr. Benhart and that he did not consider her action to be good veterinary practice. Further expert testimony was provided by Randy Britt, D.V.M., who stated that the actions taken by Dr. Benhart were not commonly used by veterinarians.
None of the plaintiff's experts expressly stated that the actions taken by Dr. Benhart fell below the standard of care owed by the defendant under the circumstances.
The law does not require a veterinarian to be infallible in his treatment of an animal. This Court has recently reaffirmed the "medical judgment rule," the principle that a physician is not liable for malpractice when he chooses a recognized method of treatment, even though other experts testify that they would have chosen an alternative method of treatment. James v.Woolley, 523 So.2d 110 (Ala. 1988). Additionally, the testimony provided by Mr. Turner and Dr. Larry Britt that contradicted their earlier statements could have persuaded the jury to assign little weight to their testimony, or to disbelieve their testimony altogether. *Page 719 
In contrast, the defendant's expert, J.T. Vaughn, D.V.M., who is the dean of the Auburn University School of Veterinary Medicine, testified that in his opinion Dr. Benhart's actions did not fall below the acceptable standard of care owed by the defendant under these circumstances. Also, Dr. Vaughn testified that Dr. Benhart's action in orally administering the bicarbonate of soda solution was a reasonable and acceptable veterinary practice under the circumstances.
After reviewing the record, we conclude that the plaintiff failed to produce sufficient credible evidence to entitle the jury to find that Dr. Benhart's actions fell below the acceptable standard of care under the circumstances. Therefore, the judgment is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and ADAMS, JJ., concur.