The plaintiff, Charilyn Hendrix, brought an action for fraud in connection with the sale of an automobile against the defendants, Courtesy Ford, an automobile dealership in Montgomery, Alabama, and its employee, Larry Woodard. She sought compensatory and punitive damages in the sum of $500,000. After finding that the defendants had perpetrated a fraud on the plaintiff, the jury assessed only nominal damages in the amount of $1.00 and made no award of punitive damages. Dissatisfied with the amount of the verdict, the plaintiff filed a motion for new trial on the grounds that the damages were inadequate as a matter of law. The trial court granted the plaintiff's motion for new trial, and the defendants appeal from that decision.
Two issues are presented for review here: (1) whether the trial court properly granted a new trial on the ground that the verdict went against the great weight of the evidence; and (2) whether certain oral instructions given by the trial court to the jury, which were not objected to by the plaintiff at that time, could now be reviewed by an appellate court.
In this case, the jury heard conflicting evidence on the issue of fraud. The vehicle in question, a 1984 Thunderbird, had been wrecked by its prior owner and subsequently repaired by the defendants before offering it for sale. At issue was whether this collision and resulting damage to the vehicle were disclosed to the plaintiff prior to the consummation of the sale. The jury found that the defendants intentionally misrepresented the condition of the vehicle at the time of the sale on December 17, 1984.
The plaintiff claims she suffered the following financial losses as a result of the undisclosed damaged condition of the vehicle at the time of the sale:
1. Straightening frame $ 300.00
2. Automobile tires 60.00
3. Body shop repairs 800.00
4. Value of the vehicle 8,678.10
Her claims for damages were disputed throughout the trial, both in terms of whether they were in fact suffered and, if so, whether they were caused by any act of the defendants. The facts surrounding each claim are set forth as follows:
 Straightening Frame
The plaintiff did not experience any steering alignment problems until a few months after she purchased the car. Three witnesses, two of whom were offered by *Page 90 
the plaintiff, stated that these alignment problems could have been caused by hitting a pothole or curb. Furthermore, an expert witness testified that he found no frame damage when he inspected the vehicle. His testimony was supported by the insurance adjuster's inspection of the vehicle after the prior undisclosed collision. He testified that the repair estimate of the prior collision indicated that the frame of the vehicle had not been damaged. Moreover, the plaintiff did not personally incur the cost of such repairs. Whatever repairs were made were paid for by Mr. Moncrief, who was renting the car from the plaintiff at the time of the repair work.
 Automobile Tires
The plaintiff also claimed damages for tire wear which she insisted resulted from the prior collision damage to the vehicle. The evidence, however, indicated that the tire wear could have been caused by the quality of the tires (she paid $15.00 for one tire and $20.00 for the other one), the miles of operation on the tires (15,000 miles during a 12-month period), or the alignment problem, which was, as stated above, of disputed origin. We note that two other tires were purchased for the vehicle during the time Mr. Moncrief rented the car from the plaintiff. There is no evidence, however, that the plaintiff paid for these additional tires.
 Body Shop Repairs
There is no evidence that body shop repairs costing $800 were performed or required. On cross-examination, the plaintiff testified, as follows:
 "Q. But, as far as the exterior of that car, the sheet metal, the paint job, the left side of it, there's been no body work on this vehicle?
 "A. No, sir. An '84 model? What does it need body work for?"
An expert witness characterized the repairs performed to the vehicle by Courtesy Ford before the sale to the plaintiff as workmanlike, safe, and functional.
 Value of the Vehicle
We are clear to the conclusion that "fair market value," as presented to the court in this case, is opinion evidence. The jury has the prerogative to give as much weight to opinion evidence as their general knowledge and experience dictate.Morgan v. Harris, 55 Ala. App. 694, 318 So.2d 723 (1975). Such evidence is not binding upon a jury or the trial court even when it is without dispute. General Motors Corp. v. Van Marter,447 So.2d 1291 (Ala. 1984).
It appears to this court that the jury exercised its prerogative as to the opinion evidence, as well as to disputed evidence on other damages claimed, and found that while a fraud was committed by the defendants, no actual damages were proved as being suffered by the plaintiff.
The defendants contend that the trial court improperly granted a motion for new trial for the plaintiff. The trial court granted the plaintiff's motion for new trial on the specific ground that the verdict of $1.00 "clearly went against the great weight of the evidence in that the damages proved by the plaintiff greatly exceeded the judgment returned in her favor."
In Jawad v. Granade, 497 So.2d 471 (Ala. 1986), our Supreme Court set out the new standard of review to be applied in reviewing such cases as the one before us, as follows:
 "[A]n order granting a motion for new trial on the sole ground that the verdict is against the great weight or preponderance of the evidence will be reversed for abuse of discretion where on review it is easily perceivable from the record that the jury verdict is supported by the evidence."
Jawad, supra, at 477.
It is also axiomatic that a jury is entitled to award nominal damages in those cases where no causal connection can be found between the damages suffered and the duty breached. Benson v.Vick, 460 So.2d 1309 (Ala.Civ.App. 1984); Williams v. Clark,50 Ala. App. 352, 279 So.2d 523 (1973). Under the facts described above, we find that the jury could have reasonably inferred that the fraud committed by the *Page 91 
defendants was not the proximate cause of any damages claimed by the plaintiff.
In any event, we must conclude that there was clearly evidence to support the verdict of the jury and that the presence of such evidence precludes the trial court from exercising such statutory or supervisory power over the verdict as to set it aside.
Since the issue presented here regarding the adequacy of the jury verdict requires reversal, we see no need to respond to the second issue presented by the defendants regarding the clarity of an unobjected-to jury charge.
We reverse and remand for a reinstatement of the jury verdict.
REVERSED AND REMANDED WITH DIRECTIONS.
BRADLEY, P.J., and HOLMES, J., concur.