STEAGALL, Justice.
Wanda Faye Robinson sued Dr. Ronald Stewart and Northeast Alabama Regional Medical Center (“NARMC”) for damages, alleging negligence arising out of surgery Dr. Stewart performed on her.[1] The jury returned a verdict in favor of Dr. Stewart, but against NARMC, and awarded Mrs. Robinson and her husband $250,000. The trial court entered a judgment on that verdict. NARMC filed a motion for JNOV or, in the alternative, a new trial and also filed a motion to vacate the judgment, both of which were denied. However, the trial court granted Mrs. Robinson’s motion for a new trial with regard to Dr. Stewart. It is from these two rulings that NARMC and Dr. Stewart appeal.
Mrs. Robinson initially saw Dr. Stewart on August 25, 1983, complaining of abnormal bleeding. Dr. Stewart’s examination revealed that Mrs. Robinson had an enlarged uterus; it was necessary that it be removed, and Dr. Stewart removed it by vaginal hysterectomy on September 21, 1983, at NARMC. Mrs. Robinson was released from the hospital on September 26, 1983. From that date until January 3, 1984, she saw Dr. Stewart five times, complaining of, along with other things, pain, nausea, vomiting, discharge, inability to sleep, and dizziness. Dr. Stewart prescribed various medications during that period, and it was not until Mrs. Robinson’s last visit, on December 8, 1983, that he ordered a pelvic sonogram to determine the source of a mass that he discovered posteri- or to her vaginal cuff. Suspecting this to be an ovarian cyst, he scheduled exploratory surgery for January 4, 1984; during that surgery a vaginal pack, or sponge, was found that had been left during the hysterectomy. In addition, because the ovaries and fallopian tubes had become infected, Dr. Stewart had to remove them. Testimony at trial revealed that, although at the end of the hysterectomy Dr. Stewart was told by the circulating nurse that the sponge count was correct, apparently one of the vaginal packs had been cut in half, so that although the number seemed to be correct, in fact one sponge had been left in and was not included in the count.
I
Dr. Stewart argues that the trial court erred in granting Mrs. Robinson a new trial. Although her motion alleged ten grounds (one of them being that the jury’s verdict was against the great weight and preponderance of the evidence), the trial court’s order granting her motion assigned none. When the trial court gives no reason for granting a motion for new trial and one of the grounds is that the verdict is against the great preponderance of the evidence and no other valid ground is apparent, this Court presumes that that was the basis for its decision. Ex parte Oliver, 532 So.2d 627 (Ala.1988). See, also, Kennedy v. General Transport Co., 293 Ala. 455, 304 So.2d 896 (1974).
*441 Consequently, the standard of review that we apply on appeal is that enunciated in Jawad v. Granade, 497 So.2d 471 (Ala.1986). Where the basis for the granting of a new trial is that the verdict is against the great weight and preponderance of the evidence, the order granting the motion “will be reversed for abuse of discretion where on review it is easily perceivable from the record that the jury verdict is supported by the evidence.” 497 So.2d at 477 (emphasis added).
We begin by observing that, while expert testimony is not required in sponge cases to establish the proper medical treatment and procedure, Powell v. Mullins, 479 So.2d 1119 (Ala.1985), both Dr. Stewart and Mrs. Robinson presented expert testimony on this issue. We recently held that such testimony presents an issue of fact to be decided by the jury.
In Riase v. Wood, 540 So.2d 646 (Ala.1988), we distinguished the facts of that case from those of Powell, supra:
“[T]he Court [in Powell ] held that leaving a sponge inside a patient did ‘ “ ‘fall within the exception that would allow a jury to exercise its fact-finding prerogative to adjudge liability absent expert testimony,’ ” ’ quoting Tant v. Women’s Clinic, 382 So.2d 1120, 1121 (Ala.1980) (exception recognized, but issue not presented). 479 So.2d at 1127.
“The present case is different from Powell, because in the case before us a review of the testimony given reveals that expert testimony was offered by both sides ...; therefore, the exception set out in Powell, supra, does not come into play. Because there was evidence by both sides regarding the me of epinephrine, the jury was entitled to consider and believe either side’s evidence.”
540 So.2d at 647-48 (emphasis added).
Here, Dr. Stewart testified that it was within the standard of care for a physician to rely on nurses to count sponges and packs accurately and that he met that standard of care in Mrs. Robinson’s case. Dr. Barbara Moersch, Mrs. Robinson’s current obstetrician/gynecologist and Dr. Stewart’s expert witness, stated that it would be acceptable, depending on the physician’s preference, to use only a portion of the vaginal pack during surgery. She also testified that Dr. Stewart met the standard of care when he relied on a nurse’s sponge count to confirm that no foreign objects had been retained in the surgical area, and she testified that such reliance was “absolutely” acceptable. Finally, Dr. James G. Dingfelder, an expert from North Carolina retained by Mrs. Robinson, stated on cross-examination that it was within the standard of care for a surgeon performing a vaginal hysterectomy to rely on a nurse’s sponge count and that he (Dr. Dingfelder) did so in his own practice.
Applying the Jawad standard to this testimony, it is easily perceivable from the record that the jury’s verdict in favor of Dr. Stewart is supported by the evidence. Thus, the trial court should not have granted a new trial for Mrs. Robinson regarding Dr. Stewart.
We do hold, however, that, based on the evidence before it, the jury was entitled to find against NARMC and that such a verdict is not, as NARMC contends, inconsistent as a matter of law with the verdict for Dr. Stewart. “[I]n an action against two defendants for damages allegedly caused by the combined or concurring negligence of the defendants, it is not necessary to show negligence of both defendants in order for recovery to be had against one shown to be negligent. Chesser v. Williams, 268 Ala. 57, 104 So.2d 918 [1958], and cases there cited.” Underwood v. Holy Name of Jesus Hospital, 289 Ala. 216, 220, 266 So.2d 773, 777 (1972) (emphasis added). See, also, Davison v. Mobile Infirmary, 456 So.2d 14 (Ala.1984), and General Motors Corp. v. Edwards, 482 So.2d 1176 (Ala.1985).
In this case, the two nurses in charge of the sponge count were employees of NARMC and they told Dr. Stewart more than once that the count was correct, before he closed the surgical area; this evidence presented a jury question on the issue of whether the hospital breached its duty to Mrs. Robinson. See Davison v. *442 Mobile Infirmary, supra. Both Dr. Ding-felder and Dr. Moersch testified that the nurses’ actions fell below the standard of care. Moreover, the circulating nurse admitted that she and the scrub nurse violated the standard of care generally exercised by nurses with regard to sponge counts. Certainly, there was ample testimony to support the jury’s apparent conclusion that the nurses’ negligence was the sole proximate cause of Mrs. Robinson’s injuries. Here, the presumption of correctness of the jury’s verdict was strengthened by the trial court’s denial of NARMC’s motion for new trial and JNOV, Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988); thus, we affirm the trial court’s ruling on that motion and we affirm the underlying judgment against NARMC. We reverse the trial court’s order granting a new trial against Dr. Stewart.
87-1040 AFFIRMED.
87-1041 REVERSED.
MADDOX, JONES, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.

. Her husband, Bobby Robinson, also sued for loss of consortium.