KENNEDY, Justice.
Heather Nicole Thursby, acting through her father, sued Dr. Richard S. Dabbs, alleging medical negligence in connection with Dr. Dabbs’s failure to diagnose a congenital hip dislocation. Heather’s parents, *603 Timothy and Renee Thursby, joined as plaintiffs, also alleging medical negligence. The jury returned a verdict in favor of Dr. Dabbs. The plaintiffs moved for a new trial, claiming that the jury’s verdict was against the great weight of the evidence and that the verdict was contrary to the law and the facts of the case. The trial court ordered a new trial, and Dr. Dabbs appealed.
At the outset, we note that Dr. Dabbs testified that he failed to diagnose Heather’s congenital hip dislocation while she was his patient. (R.T. 352.) However, the issue at trial was whether in failing to diagnose that condition Dr. Dabbs deviated from the medically accepted standard of care.
Heather was four months old when she was first taken to Dr. Dabbs for treatment. Several other doctors had previously examined Heather, and none of them had discovered her dislocated hip. Dr. Dabbs examined Heather 7 times in a 14-month period, during which she visited his office 9 times. On two of the visits, an associate of Dr. Dabbs treated Heather. Eight of Heather’s nine visits were for specific illnesses that she had at the time. On only one occasion was Heather “well” during her visit with Dr. Dabbs. Dr. Dabbs claims that whether a child is well or sick during a visit is critical to the scope of the doctor’s examination. He contends that when a child is sick, the doctor concentrates on the child’s specific illness and that when a child is well, the doctor can perform a complete examination for a “well” child. Dr. Dabbs contends that he examined Heather’s hips on three separate occasions.
Heather went to another pediatrician, Dr. Phillip Kline, who examined Heather and immediately discovered the hip dislocation. Dr. Kline referred Heather to Dr. Richard Elkus, a pediatric orthopedist. Dr. Elkus operated on Heather to correct the dislocated hip.
An expert for the plaintiffs, Dr. Larrie Greenburg, testified that, in his opinion, Dr. Dabbs deviated from the appropriate standard of care by not diagnosing the congenital dislocation of the hip in a timely manner. He testified that the treatment is better when the dislocated hip is diagnosed early. Dr. Greenberg also stated that diagnosis of a congenital dislocated hip is more easily made during the first 28 days of a child’s life. Another expert for the plaintiffs, Dr. Robert Bright, testified that in Dr. Dabbs’s report he could find no record of a thorough examination of Heather’s musculoskeletal system and that Dr. Dabbs’s failure to do such an examination was a deviation from the accepted standard of care. Both experts did testify that there is a difference in the type of examination given to a sick baby and the type of examination given to a well baby.
Dr. Dabbs, after being qualified as an expert, testified that he met the appropriate standard of care. He stated that when a child is sick, a doctor has a duty to concentrate on the particular illness. He stated that the standard of care did not require a doctor to examine the hips on every occasion and that he did examine Heather’s hips on three separate visits. He stated that Heather never showed any signs of a dislocated hip when he examined her. Dr. Dabbs presented expert testimony from Dr. David Reynolds, who testified that there is a difference in the type of examination given to a sick baby and the type given to a well baby. He testified that, in his opinion, the scope of the examinations performed by Dr. Dabbs was appropriate and that the care given to Heather was appropriate. Dr. Reynolds also testified, based on Heather’s patient records, that she showed no signs of a dislocated hip when she was examined by Dr. Dabbs. He testified that it is possible to do an adequate examination and still not detect a dislocated hip.
Dr. Elkus, the pediatric orthopedist who operated on Heather’s hip, testified that Heather’s dislocated hip had been present since birth and that Dr. Dabbs’s failure to diagnose the dislocated hip did not cause any additional injury.
When the trial court orders a new trial based on the sole ground that the verdict was against the great weight or preponderance of the evidence, the order *604 will be reversed as based upon an abuse of discretion where, upon review, it is easily perceivable from the record that the jury verdict is supported by the evidence. Jawad v. Granade, 497 So.2d 471 (Ala.1986).
It is easily perceivable from the record that the jury’s verdict for Dr. Dabbs was supported by sufficient evidence. Dr. Reynolds testified that Dr. Dabbs met the appropriate standard of care in examining Heather. Dr. Dabbs also testified that he met the standard of care required of a doctor in this case. A jury may rely upon expert testimony from a defendant duly qualified as an expert. Jawad. Dr. Dabbs and Dr. Reynolds both testified that when a child is sick, it is the doctor’s duty to concentrate on the illness and that the standard of care does not require the doctor to examine the hips on every visit. Dr. Greenberg testified that a dislocated hip is easier to detect in the first 28 days of life. However, Dr. Dabbs did not see Heather until she was four months old. Dr. Reynolds testified that it is possible to do an adequate exam and still not detect a dislocated hip.
We reverse and remand for a reinstatement of the jury verdict.
REVERSED AND REMANDED WITH INSTRUCTIONS.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ., concur.