YATES, Presiding Judge.
Roger Dale Syx and S.P. Richards Company appeal from the trial court’s grant of a motion for a new trial.
On December 22, 1999, Lowell Thomas Britton sued Syx, S.P. Richards Company, and Genuine Auto Parts, Inc., alleging negligence and wantonness arising out of an automobile accident occurring on January 5, 1998. At the time of the accident, Syx was employed by S.P. Richards Company, and Britton alleged in his complaint that S.P. Richards Company was owned by Genuine Auto Parts. The defendants answered, denying the allegations and asserting the affirmative defense of contributory negligence. The case was tried be *717 fore a jury on August 5, 6, and 7, 2002.[1] At the close of Britton’s case-in-chief, the trial court dismissed the claims against Genuine Auto Parts. At that time, Britton withdrew his wantonness claim against Syx and S.P. Richards Company. At the close of all the evidence, the trial court determined that the defendants had not proved contributory negligence, and it refused to charge the jury on that defense. Subsequently, the jury returned a verdict in favor of Syx and S.P. Richards Company and a judgment was entered on that verdict.
On August 30, 2002, Britton moved for a new trial, arguing that the jury’s verdict and the judgment entered upon that verdict was against the great weight of the evidence. He also argued that the verdict was erroneous as a matter of law because, he asserted, the trial court’s finding that there was no contributory negligence precluded the jury from rendering a verdict for the defendants. The parties filed a joint motion to allow Britton’s motion for a new trial to remain pending for more than 90 days. On March 25, 2003, the trial court granted Britton’s motion for a new trial on the grounds that the verdict was against the great weight of the evidence, stating:
“The facts of this case show that [Britton], while sitting in his vehicle at a red light at the .... intersection, was rear ended by Defendant Roger Dale Syx. Mr. Syx was driving a large transport-type truck at the time. There was no contributory negligence charge submitted to the jury, for, under the facts presented, [Britton] could not have been guilty of contributory negligence. Evidence including medical testimony was submitted relative to [Britton’s] injuries sustained in this collision.. The evidence supporting a finding of significant monetary medical expenses is likewise not overwhelming. However, the evidence showing injury proximately caused by [Syx’s] negligence is overwhelming.
“The verdict of the jury was simply for [Syx and S.P. Richards Company] and the Court is struck with a sense of manifest injustice in the fact that absolutely no damages were assessed by the jury. While the amount of damages should of course be left to the jury, a finding in favor of [Syx and S.P. Richards Company] goes contrary to the weight of the evidence.”
Syx and S.P. Richards Company appeal.
Our supreme court, in Richardson v. Joines, 574 So.2d 787, 787 (Ala.1991), stated:
“The standard of review to be applied by this Court in reviewing the granting of a motion for a new trial is set out in Jawad v. Granade, 497 So.2d 471, at 477 (Ala.1986):
“ ‘[A]n order granting a motion for new trial on the sole ground that the verdict is against the great weight or preponderance of the evidence will be reversed for abuse of discretion where on review it is easily perceivable from the record that the jury verdict is supported by the evidence.’ ”
With regard to the standard set forth in Jawad v. Granade, 497 So.2d 471 (Ala.1986), our supreme court has stated that “the trial court is left with no discretion to grant a new trial on a ‘weight of the evidence’ ground, except when the verdict and the judgment entered thereon are so *718 against the great weight and preponderance of the evidence as to be ‘plainly and palpably’ wrong, i.e., ‘manifestly unjust.’ ” Richardson, 574 So.2d at 788. Additionally, this court must “review the evidence in the light most favorable to the prevailing party and must indulge all reasonable inferences that the jury was free to draw.” Floyd v. Broughton, 664 So.2d 897, 900 (Ala.1995).
In the present case, our review of the record indicates that on the morning of January 5, 1998, Syx was driving a truck owned by S.P. Richards Company when he struck Britton’s truck in the rear while Britton was stopped at a traffic light. Syx testified that at the time of the accident he was traveling approximately 30 to 35 miles per hour when he struck Britton.
Syx and S.P. Richards Company contend that the jury could have determined that Syx “did not act treasonably” when he struck Britton because the roads were wet and the traffic light had changed to green before the accident occurred. However, they cite no cases other than general propositions of law in support of their argument that Syx’s actions were reasonable. See Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)(it is not for the appellate court “to make and address legal arguments for a party based on un-delineated general propositions not supported by sufficient authority or argument”). Even if Syx and S.P. Richards Company had properly supported their argument, Syx’s testimony does not support an inference that Syx acted reasonably under the circumstances. Syx’s own testimony is as follows:
“[Syx]: Well, as I got in view of the intersection, I saw there were two vehicles sitting there. And, Mr. Britton was the second vehicle. I saw the light was red. As I got closer the light turned green. And, the first car [in front of Britton] started to pull off. And, as I noticed that Mr. Britton didn’t pull off, I started stopping, and as I started to stop, the truck slid and I slid into the rear end of Mr. Britton.”
Syx’s testimony indicates that he approached an intersection where the traffic light was red and where there were two vehicles stopped in front of him. Although the light changed to green and the first car had started to proceed through the intersection, Syx struck Britton while traveling approximately 30 to 35 miles per hour. There is nothing in the record from which a jury could reasonably infer that Syx acted reasonably under these circumstances. Cf. Jones v. Baltazar, 658 So.2d 420 (Ala.1995)(defendant acted as a reasonable person under circumstances where defendant was attempting to pass another motorist who deliberately accelerated and, in order to avoid a head-on collision, the defendant had to reenter the right traffic lane and, because the road was wet, could not stop in time to avoid rear-end collision with plaintiff). Additionally, if Syx and S.P. Richards Company are attempting to argue that a sudden emergency existed, they did not raise that argument at the trial court level; moreover, we note that the sudden-emergency doctrine is not available if the sudden emergency was the fault of the one seeking to invoke the doctrine. See Waters v. Williams, 821 So.2d 1000 (Ala.Civ.App.2001)(sudden-emergency doctrine not available in action arising out of rear-end collision where defendant saw plaintiffs brake lights three car lengths in front of her but failed to stop).
Syx and S.P. Richards Company also argue that, even if the jury determined that Syx was negligent, there was conflicting evidence regarding the proximate cause of Britton’s injuries and that the jury resolved those conflicts in their favor.
*719 We must now review the evidence in a light most favorable to Syx and S.P. Richards Company, and apply the standard set out in Jawad. Britton was not transported to the hospital after the accident. However, on the afternoon of the accident, Brit-ton felt pain in his neck and went to Dr. Andy Middleton, a chiropractor. Dr. Middleton did not testify at trial and his records were not reviewed by any of the expert witnesses. ,
Britton testified that he has had worsening pain in his neck and back since the accident. Dr. John Hackman, a neurologist, testified that he first saw Britton in December 2000 and that he believed Brit-ton’s major problem was bone spurs pinching nerves. He further testified that Brit-ton had a two- or three-year history of neck, arm, and shoulder pain. Dr. Hack-man testified that he did not know what caused Britton’s bone spurs and pinched nerves. He stated that it was possible that trauma from the automobile accident was the cause, but that bone spurs were generally caused by degenerative changes in the disc.
Dr. Teresa Allen originally began treating Britton in November 2000 with “chelation” therapy. Chelation therapy is used to remove heavy metals from the body, such as when a child has lead poisoning. Dr. Allen used chelation therapy to treat Britton for vascular disease, which was unrelated to the car accident. In January 2001, she began treating Britton with “pro-lo” therapy. Prolo therapy is a form of injection treatment used to aid healing by triggering the inflammatory process through injections. Dr. Allen used this therapy to treat Britton’s neck. The only medical bills for which Britton sought payment in the present case were $1,200 for Dr. Allen’s prolo therapy.
Dr. Allen testified that small bone spurs could be the result of degeneration. However, she testified that large bone spurs, like Britton’s, were caused by trauma. Dr. Allen acknowledged that in March 2002, while she was treating Britton, Britton was involved in another automobile accident and that the second accident further exacerbated Britton’s symptoms.
Dr. Melvin Russell testified, in pertinent part, as follows:
“Q. Now, again, you didn’t — the first time you saw Mr. Britton was 20 months after you saw him for this accident; is that correct?
“A. That’s correct.'
“Q. And, again, having no prior diagnostic studies on him and having seen him 20 months after his accident, can you say with a reasonable degree of medical certainty, that any of the loss of height at C5-6 would be the result of a motor vehicle accident that he reported to you?
“A. From the history that I got from him and from my examination, I would say that the disc would be a direct' result of the accident.
“Q. Why is that?
“A. Cervical disc is usually due to trauma and without any further — any previous history of any trauma or other problems, I would just have to assume from his history that this would be the cause. Now arthritis, as we know it, is not due to trauma or wrecks, whiplashes, et cetera, it is due to age. Cervical discs are generally caused by trauma.
“Q. At the very same time, if he had loss of disc height in the C5-6 area before this accident, then you couldn’t say that what you observed on the spinal films on August 11, 2000, would be the result of this accident?
“A. That’s correct.
*720 “Q. In fact, if Mr. Britton had complained of chronic neck pain, [to] Dr. Wimpee for at least two years before the accident, can you say that his neck complaints were related to this motor vehicle accident that he reported to you?
“A. Well, if you look at the X-rays, he has arthritis in his neck, and he can have been hurting for years with that.
“Q. Can a bony spur irritate a nerve?
“A. Yes, it can.
“Q. And, sometimes even people have surgery because of a bony spur.
“A. That’s correct.
“Q. And, a bone spur is usually an arthritic condition?
“A. That’s correct.”
Dr. Russell further testified that he sent Britton to a neurologist for further testing on whether Britton had pinched nerves.
Dr. C.W. Wimpee, a chiropractor, had treated Britton 12 times from 1995 to 1998 for adjustments to Britton’s spine before and after the accident. He testified that he did not have an opinion as to whether the pain Britton suffered after the accident was caused by the trauma of the traffic accident. The following exchange occurred:
“Q. Do you have an opinion as to or is it possible for you to have an opinion as [to] whether or not the pain that Lowell Britton was suffering after January of 1998, was caused by blunt force trauma of the traffic accident?
“A. You can never tell. You can never tell. You can’t say for sure.
“Q. You just know his spine was out of adjustment?
“A. Yes. Yes. And, he had some arthritis in it, too, and thin discs.”
In Scott v. Farnell, 775 So.2d 789 (Ala.2000), the question presented for review was whether the trial court erred in granting the plaintiff a new trial based solely on the ground that the jury’s verdict in favor of the defendant was contrary to the great weight of the evidence. The plaintiff was involved in a rear-end collision with the defendant, and the evidence was disputed as to whether the rear-end collision caused the injuries of which the plaintiff complained.
“It is not the function of this Court to assume the role of the jury and to state whether, based on the evidence presented at trial, we would have found in favor of the plaintiff and awarded her damages. Our role is, instead, to determine whether ‘it is easily perceivable from the record that the jury verdict is supported by the evidence.’ Jawad [v. Granade], [497 So.2d 471, 477 (Ala.1986)]. In making that determination, we are mindful that ‘jury verdicts are presumed to be correct, and [that] no ground for granting a new trial will be more carefully scrutinized or more rigidly limited than that the verdict is contrary to the weight of the evidence.’ Delchamps, Inc. v. Larry, 613 So.2d 1235, 1239 (Ala.1992). Further, it is within the province of the jury, not an appellate court, to weigh the credibility of witnesses. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297 (Ala.1986). Given those standards and given the Jawad standard, we conclude that the trial court erred in granting [the plaintiff]’s motion for a new trial.”
775 So.2d at 793.
We cannot say that it is “easily perceivable” from the record that the jury verdict in favor of Syx and S.P. Richards Company was unsupported by the evidence when viewing that evidence in a light most favorable to Syx and S.P. Richards Company and indulging all reasonable inferences that the jury was free to draw. There was conflicting evidence as *721 to whether Syx’s negligence was the proximate cause of the injuries for which Brit-ton sought recovery at trial. Dr. Wimpee testified that he treated Britton both before and after the accident but that he did not have an opinion as to the cause of Britton’s pain. Although Dr. Allen, who began treating Britton two years after the accident, testified that she believed Brit-ton’s bone spurs were a result of the accident, Dr. Hackman testified that he did not know what caused Britton’s bone spurs and pinched nerves, but that generally bone spurs were caused by degenerative changes. Dr. Russell concluded that his examination of Britton, without knowing Britton’s medical history, indicated that the accident caused the injuries. However, Dr. Russell’s testimony also indicates that Britton’s neck pain could instead be due to arthritis. Although the parties agreed that Britton had incurred $1,200 in medical bills for Dr. Allen’s prolo therapy treatment, that agreement does not establish the causal tie between the treatment and the accident, as Britton argues — it merely establishes that Britton sought treatment for neck pain. Therefore, the trial court abused its discretion in granting Britton’s motion for a new trial.
REVERSED AND REMANDED.
CRAWLEY and PITTMAN, JJ„ concur.
THOMPSON and MURDOCK, JJ., concur in the result, without writing.

. Before trial, Syx and S.P. Richards Company had paid for property damage to Britton’s truck. The only damages sought at trial were related to Britton’s personal injuries, and the parties stipulated that the plaintiff would seek $1,200 in special damages as payment for Dr. Teresa Allen's services.