On Application for Rehearing
The opinion of June 21, 1996, is withdrawn, and the following opinion is substituted therefor. On May 17, 1990, Hester Bennich slipped and fell on the premises of the Kroger grocery store in Hartselle, Alabama. She and her husband sued the Kroger Company, alleging that negligence on its part had proximately caused her to fall and to incur personal injury. Mrs. Bennich sought damages for an alleged total hearing loss in her left ear, and Mr. Bennich sought damages for loss of consortium.
A jury returned a verdict for Mr. and Mrs. Bennich, awarding Mrs. Bennich $500, but awarding Mr. Bennich nothing. Mrs. Bennich moved for a new trial on two grounds: that the verdict was inadequate and inconsistent and that she had newly discovered evidence that warranted a new trial. The trial court denied the motion, and Mrs. Bennich appealed; Mr. Bennich did not appeal. We affirm.
 Adequacy of the Verdict
Mrs. Bennich contends that the trial court erred by denying her motion for new trial, because, she claims, the verdict did not include an amount at least as high as her uncontradicted special damages, totalling nearly $13,000, as well as an amount sufficient to compensate her for pain and suffering. Mrs. Bennich claims that because evidence of her medical expenses was admitted without objection, her special damages were "uncontradicted."
A jury is not bound to award medical expenses merely because they were incurred. Brannon v. Webster, 562 So.2d 1337, 1339
(Ala.Civ.App. 1990) (jury verdict of $907, when plaintiff proved special damages in excess of $100,000, upheld). The fact that a plaintiff's medical bills are admitted into evidence without objection does not necessarily mean that they are undisputed; it may be that the jury believed the plaintiff's medical expenses were not incurred as a result of the defendant's negligence. Id. See also Stricklin v. Skipper,545 So.2d 55 (Ala.Civ.App. 1988).
At trial, Kroger took the position that Mrs. Bennich's medical expenses were not incurred as a proximate result of her fall in its store on May 17, 1990, but were incurred as the result of a continuing and progressive hearing loss due to chronic adhesive otitis, a condition from which Mrs. Bennich had suffered for years before the fall. Where there is conflicting evidence as to the proximate cause of the plaintiff's injuries, it is for the jury to determine whether the plaintiff's medical expenses were caused by the defendant's negligence. Helena Chemical Co. v. Ahern, 496 So.2d 12, 15
(Ala. 1986).
Conflicts and weaknesses in the plaintiff's case may also be created through cross-examination of the plaintiff's witnesses.Brannon v. Webster, 562 So.2d at 1338. On cross-examination of Mrs. Bennich, Kroger's counsel elicited from her the fact that she had not told the jury of several other accidents that might have been the cause of her medical expenses. Kroger contended that the emergency room and X-ray charges that Mrs. Bennich incurred on May 17, 1990, were not the result of the fall in the Kroger store on that day, but were the result of other accidents that Mrs. Bennich admitted having had prior to May 17, 1990. Based on the evidence presented at trial, the jury could well have determined that only a portion of *Page 1258 
Mrs. Bennich's emergency room and X-ray charges were attributable to her May 17, 1990, fall at the Kroger store.
The trial court did not err by not awarding a new trial on this ground.
 Newly Discovered Evidence
On February 20, 1990, three months before her fall at the Kroger store, Mrs. Bennich had had a hearing test, or audiogram. On May 23, 1990, six days after her fall, she had another hearing test. The May test indicated that Mrs. Bennich's hearing had deteriorated substantially from what it had been at the time of the February test. At trial, Mrs. Bennich argued that the test results tended to show that her fall at the Kroger store was the precipitating cause of her eventual total loss of hearing. As we have mentioned, Kroger's theory at trial was that Mrs. Bennich's fall did not cause her hearing loss. Instead, Kroger maintained that Mrs. Bennich suffered from a middle ear condition called chronic adhesive otitis, the result of numerous middle ear infections she had had when she was younger, and that that condition had caused a progressive deterioration in her hearing that eventually resulted in a total loss of hearing in her left ear.
Mrs. Bennich sent the results of both audiograms to her ear specialist in Memphis, Tennessee, Dr. John Shea. Dr. Shea failed to produce the audiograms in response to a subpoena and also failed to produce them at the time of his deposition. However, in his deposition testimony, Dr. Shea stated that he had used the audiograms in his diagnosis and treatment of Mrs. Bennich, but he said that he could not locate them in his files. He declared that the audiograms showed a considerable decline in Mrs. Bennich's ability to hear, occurring between February and May 1990, and he attributed that decline to her fall in the Kroger store.
On the morning of trial, counsel for Mrs. Bennich produced copies of the audiograms, which Dr. Shea had apparently located and faxed to Mrs. Bennich's counsel the day before, and sought to have them admitted in evidence. Kroger's counsel objected on the ground of late production and surprise, and the trial court disallowed their admission. Mrs. Bennich claims that the audiograms are newly discovered evidence entitling her to a new trial.
In Pacifico v. Jackson, 562 So.2d 174 (Ala. 1990), the Alabama Supreme Court restated the five-part test for granting a new trial on the ground of "newly discovered evidence":
 " ' "(1) The evidence must be such as will probably change the result if a new trial is granted;
 " ' "(2) The evidence must have been discovered since the trial;
 " ' "(3) The evidence could not have been discovered before the trial by the exercise of due diligence;
" ' "(4) It must be material to the issue; [and]
 " ' "(5) It must not be merely cumulative, or impeaching." ' "
562 So.2d at 177 (quoting Shepherd v. Southern Ry., 288 Ala. 50,59-60, 256 So.2d 883, 891 (Ala. 1970) (quoting from ForestInv. Corp. v. Commercial Credit Corp., 271 Ala. 8, 12,122 So.2d 131 (1960)).)
Citing Strange v. Gregerson's Foods, Inc., 608 So.2d 721
(Ala. 1992), Mrs. Bennich argues that, in order for evidence to be "newly discovered," a party need not have been unaware of its existence before trial. Instead, she claims, the evidence need only have been undiscoverable.
Strange was also a slip and fall case. There, the defendant, which operated the grocery store where the fall occurred, received an anonymous tip suggesting that the plaintiff had "staged" her fall. The store was unable to corroborate that information before the trial, but, after the trial, the anonymous tipster identified herself. The supreme court held that the defendant had met the elements of the Pacifico test and was entitled to a new trial.
Here, we need not decide whether the two audiograms were "discovered since the trial" (the second part of thePacifico test) within the meaning of Strange, because the evidence fails to satisfy the first and last parts of the test: the audiograms would not "probably change the result if a new trial is granted," *Page 1259 
and they were "merely cumulative" of other evidence at trial.
At trial, Mrs. Bennich testified that she had had the audiograms; that they showed a decrease in her hearing between February and May 1990; and that she had sent them to Dr. Shea. Dr. Shea's deposition testimony was read at trial. Dr. Shea stated that he had used and relied on the audiograms and that the audiograms showed "a considerable drop" in Mrs. Bennich's hearing between February and May 1990. The actual audiograms themselves would, therefore, be merely cumulative of and illustrative of the testimony of Mrs. Bennich and Dr. Shea. SeeEtheridge v. Yeager, 465 So.2d 378 (Ala. 1985).
The audiograms, we think, would not "probably change the result if a new trial [were] granted." Several other audiograms were admitted at trial, including others made before, and some made after, Mrs. Bennich's fall at the Kroger store, and they indicate that Mrs. Bennich had had several declines in her hearing, followed by some improvement, but that, overall, she was experiencing a progressive loss of hearing. The result of another trial would, therefore, likely be the same as the apparent result of the first trial — a finding that Mrs. Bennich's fall in the Kroger store was not the proximate cause of her hearing loss.
The judgment of the trial court is affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.