On November 7, 2000, a Mobile Circuit Court jury returned a verdict against Jewel Savoy and for Marion Watson in the amount of $637.60 for damages that Watson allegedly suffered as the result of an automobile collision. After the trial court entered a judgment on the jury verdict, Watson filed a Rule 59, Ala.R.Civ.P., motion for a new trial and the trial court granted that motion. Savoy appeals from the judgment granting Watson's motion for a new trial.
In February 1999, a 1985 Buick LeSabre automobile driven by Savoy and a van driven by Watson were involved in an automobile collision at the intersection of U.S. Highway 90 and Demetropolis Road in Mobile County. Watson sued Savoy, alleging that Savoy had negligently caused the collision and that as a proximate result of the collision Watson had suffered personal injuries.[1] The case was tried before a jury on November 7, 2000. At trial, Watson presented evidence indicating that Savoy proceeded into the intersection after the traffic signal for her lane had changed to red and that the front of Watson's vehicle struck the rear passenger-side quarter panel of Savoy's vehicle. Watson presented evidence indicating that as a result of the collision he incurred special damages of $637.60 for a visit to the emergency room at Springhill Memorial Hospital and $3,149 for chiropractic treatments. Watson also claimed damages for pain and suffering as a result of the collision.
The jury returned a verdict against Savoy and in favor of Watson for $637.60, and the trial court entered a judgment on that verdict. Watson filed a Rule 59, Ala.R.Civ.P., motion requesting that a new trial be granted because, he said, the jury's verdict "was inconsistent with the uncontroverted damages presented." Watson claimed that the evidence he presented for both the emergency room examination and his chiropractic treatments was uncontroverted and that the jury erred by failing to award him any damages for his alleged pain and suffering. Watson also argued that the trial court should grant his motion because, he said, the jury was tainted by a question asked by Savoy's counsel during voir dire. The trial court granted Watson's motion for a new trial but did not state the grounds for its decision. Savoy then filed a Rule 59(e), Ala.R.Civ.P., motion requesting that the trial court vacate its order granting Watson's motion for a new trial. The trial court denied Savoy's Rule 59(e) motion and Savoy has appealed to this court.
On appeal, Savoy argues that the trial court abused its discretion by granting Watson's motion for a new trial because, she says, the jury verdict was not inconsistent or otherwise inadequate in light of the controverted and conflicting evidence presented regarding Watson's alleged damages. Savoy also argues that her attorney's alleged question to the venire during *Page 139 
voir dire did not "taint the jury panel" so as to prevent Watson from receiving a fair trial.
In his motion for a new trial, Watson argued that the jury verdict was inconsistent because the jury awarded him special damages in the amount of $637.60. Watson argues that this award evidently reflects the amount of his emergency room expenses and is insufficient to compensate him for his alleged pain and suffering and the cost of his chiropractic treatments.
At trial, Watson admitted stating that he "felt all right" immediately after the collision. However he also testified that approximately 30 minutes after the collision he had begun to feel stiffness and a slight pain in his neck, lower back, and knee and that the pain had increased over the next few hours. Watson was examined at the emergency room of Springhill Memorial Hospital a few hours after the collision. The emergency room records state that Watson's pain had become "worse with movement," that he had tenderness in his neck and back, and that he apparently had complained about knee pain. Watson was diagnosed with a sprained neck and a strained lower back, but the examining physician noted the absence of any spasms. The records also reflect that Watson had degenerative changes in his neck and spine, that he had osteophytes in his neck, and that he had facet joint disease in his back.
After Watson's examination at the emergency room, the attending physician prescribed medication and told Watson to "see Dr. Rutledge III in 2-3 days if [he had] not improved." Watson testified that the stiffness and pain in his neck and back increased in the days following the emergency room examination. However, instead of arranging for an appointment with Dr. Rutledge, Watson stated that he had contacted Dr. James Gordon, a chiropractor, 12 days after the collision. The record reflects that at the time that Watson contacted Dr. Gordon, Watson had already contacted his attorney.
Dr. Gordon testified that the first time he examined Watson, Watson was complaining of pain in his lower back, neck, and right knee; he said that his alleged injuries had resulted from the collision with Savoy's vehicle. Dr. Gordon testified that his examination indicated that Gordon had superficial and deep muscle spasms in his neck and tenderness and muscle spasms in his lower back. Dr. Gordon stated that those type of injuries were consistent with someone who had been involved in an automobile collision and that, in his opinion, Watson's injuries had been caused by the collision with Savoy's vehicle.
Dr. Gordon admitted that it was not uncommon for a patient who had a degenerative condition to complain of pain during testing for neck or lower back injuries. He also admitted that the osteophyte formations in Watson's neck could have caused pain. However, Dr. Gordon stated that degenerative changes also would make a person more susceptible to an injury from a collision.
Dr. Gordon treated Watson several times a week for approximately two months, at which time Dr. Gordon noted "an absence of complaints[,]. . . orthopedic tests within normal limits, so looks like he was back to near normal." On cross-examination, Dr. Gordon admitted that in the past when he had testified for patients he had always testified that the injuries or conditions that he had treated the patient for had been caused by the accident in question. Dr. Gordon also testified that his bill for treating Watson totaled $3,149, and that his charges were reasonable and necessary. He admitted that he had charged Watson $500 for testifying at trial *Page 140 
and $125 for writing a letter to Watson's attorney, but denied that any payment would have affected his testimony or that payment of his bills depended on the outcome of Watson's case.
As a general rule, jury verdicts are presumed to be correct and should not be set aside on the grounds of inadequacy of damages unless the amount awarded is so inadequate as to indicate passion, prejudice, or improper motive on the part of the jury. Shelby v. Phillips, 694 So.2d 30,31 (Ala.Civ.App. 1997). Thus, we "must review the evidence in the light most favorable to the prevailing party and must indulge all reasonable inferences that the jury was free to draw." Floyd v. Broughton,664 So.2d 897, 900 (Ala. 1995); see also Cooper v. Peturis, 384 So.2d 1087
(Ala. 1980). Where there is a dispute regarding the damages the plaintiff incurred as a proximate result of the defendant's wrongful conduct, the determination of a damages award is exclusively within the discretion of the jury and the jury's assessment should be afforded a strong presumption of correctness. Sizemore v. Patel, 702 So.2d 172, 174
(Ala.Civ.App. 1997); Brannon v. Webster, 562 So.2d 1337, 1339
(Ala.Civ.App. 1990); Nemec v. Harris, 536 So.2d 93, 94 (Ala.Civ.App. 1988). Furthermore, in exercising its discretion, a jury has the exclusive right to weigh evidence, give credibility (or not) to witnesses, and draw inferences from the evidence before it. Brannon,562 So.2d at 1339; Slaughter v. Burrell, 669 So.2d 954, 955 (Ala.Civ.App. 1995).
In the present case, neither the reasonableness nor the necessity of Watson's chiropractic bills was undisputed. While Savoy stipulated to the reasonableness of Watson's emergency room bills, there was no stipulation as to the necessity of the emergency room treatments. The jury could have awarded damages to compensate Watson for only part of the $637.60 incurred by Watson for emergency room expenses,[2] or none of it. The balance of the $637.60, or all of it, could represent compensation awarded by the jury for Watson's alleged pain and suffering. In other words, the jury could have reasoned that Watson suffered some sprains or bruises, but that his injuries were such that all or part of the treatment in the hospital emergency room was unnecessary.
A jury certainly may question the necessity of claimed medical expenses. Vinzant v. Hughes, 579 So.2d 681, 683 (Ala.Civ.App. 1991). When medical bills are admitted into evidence, the jury is free to conclude that some or all of the bills were unnecessary. Kite v. Word,639 So.2d 1380 (Ala.Civ.App. 1994). We also note this court's holding inBennich v. Kroger Co., 686 So.2d 1256 (Ala.Civ.App. 1996):
 "A jury is not bound to award medical expenses merely because they were incurred. Brannon v. Webster, 562 So.2d 1337, 1339 (Ala.Civ.App. 1990) (jury verdict of $907, when plaintiff proved special damages in excess of $100,000, upheld). The fact that a plaintiff's medical bills are admitted into evidence without objection does not necessarily mean that they are undisputed; it may be that the jury believed the plaintiff's medical *Page 141 
expenses were not incurred as a result of the defendant's negligence."
Bennich v. Kroger Co., 686 So.2d at 1257.
In Brannon v. Webster, the plaintiff claimed no injuries at the time of the automobile accident that formed the basis of that case, but she subsequently complained of neck pain and sought medical attention. Her physician determined that she suffered from mild cervical strain that would resolve itself given time to heal, and he recommended rest. The plaintiff continued to suffer pain and was referred to other physicians for therapy and for additional diagnostic tests, all of which gave normal results. The bills for the plaintiff's claimed medical expenses and lost wages were admitted into evidence, without objection, as reasonable charges. The jury returned its award in an amount far less than that claimed by the plaintiff, and it did not specify what amount was for special damages and what amount, if any, was for pain and suffering. Although the plaintiff in Brannon contended that her special damages were proven and undisputed, that she had also presented proof of some pain and suffering, and that the defendant had presented no testimony disputing her special damages, this court found it significant that while the defendant did not offer his own contradictory evidence, his counsel created conflicts and weaknesses in the plaintiff's case through cross-examination of her witnesses. This court concluded that "[c]learly, here the jury, as trier of facts, apparently did not believe [the plaintiff] proved her claimed damages." Brannon,562 So.2d at 1339. We believe this case is similar in some respects to Brannon.
Alternatively, the jury could have reasonably concluded that Watson should be awarded only his emergency room medical expenses, reasoning that his decision to seek an assessment and treatment at an emergency room was a reasonable precautionary measure, but ultimately concluding that Watson suffered no appreciable injury, or at least no appreciable pain and suffering, as a result of the accident. The evidence from which the jury could have concluded that the injuries were slight or that Watson suffered from no appreciable pain or suffering included the fact that the collision was not a severe one, and that Savoy, an 88-year-old woman, was not injured. Further, it was undisputed that Watson suffered from preexisting medical conditions. Moreover, there was sufficient evidence in the record from which the jury could question Watson's credibility as to the extent of his injuries and/or the extent of his pain and suffering. The jury could have concluded that Watson was less than truthful with respect to his complaints of pain.
As this court explained in Brannon v. Webster, a jury has the "discretion to determine the amount of damages when the extent of the injury is uncertain." 562 So.2d at 1339. Here, as in Brannon, the record is such that the jury reasonably could conclude that Watson did not prove all of his claimed damages.
"It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge." Hill v. Sherwood,488 So.2d 1357, 1359 (Ala. 1986). However, it is equally well established that the exercise of that discretion by the trial court may be disturbed by this court where a legal right is abused and the record plainly and palpably shows the trial judge to be in error in granting the new trial.Id. In this case, the damages award is one that reasonable jurors could have made based on the particular record presented. We conclude that the trial judge plainly and palpably erred in granting Watson's motion for a new trial. *Page 142 
We have also examined the record in light of the contention by Watson that the jury was tainted by questions asked by Savoy's counsel during voir dire, and find that contention to be without merit. Among other things, the record on appeal does not contain a transcript of the voir dire proceedings.
Accordingly, the trial court's order granting a new trial is due to be reversed, and the cause remanded for the entry of a final judgment based upon the jury's verdict.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson and Pittman, JJ., concur.
Crawley, J., concurs in the result.
Yates, P.J., dissents.
[1] Larry James was a passenger in Watson's vehicle and was also allegedly injured in the collision. James was a co-plaintiff in the action filed against Savoy, but he settled his claim against Savoy before trial. James's claim was dismissed with prejudice.
[2] The $637.60 was comprised of three separate charges: a $90 charge from Springhill Diagnostic for the review of X-rays, a $121 charge from the emergency room physician, and a $426.60 charge from Springhill Memorial Hospital. Springhill Memorial Hospital's charge consisted of a $125.10 emergency room fee, a $134.20 fee for a cervical spine X-ray, and a $167.30 fee for a spine-pelvis X-ray.